**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - -X

In re ALFRED LOUIS FAIELLA,　　　　　　　Chapter 7
　　　　　　　　　　Debtor.　　　　　　　　Case No: 05-50986 RTL

- - - - - - - - - - - - - - - - - - - - - - - - - -X

C. STEWART SMITH &
　　ESTELLA SMITH, Plaintiffs

　　　　　　v.

ALFRED LOUIS FAIELLA,

　　　　　　　　　　　　　　　　　　Adv. Proc. No. 06-1547 (RTL)

　　　　　　Defendant..

- - - - - - - - - - - - - - - - - - - - - - - - - -X

## OPINION

**APPEARANCES:**
ANTHONY P. AMBROSIO, ESQ.
(Attorney for Plaintiffs)

BRESSLER AMERY & ROSS
Michael J. Connelly, Esq.
George R. Hirsch, Esq.
(Attorneys for Debtor/Defendant)

**RAYMOND T. LYONS, U.S.B.J.**

　　　　Creditors objected to the debtor's discharge under 11 U.S.C. § 727(a)(4) alleging that he

falsely listed two companies owned by his ex-wife as creditors on Schedule F, falsely claimed a

garnishment for alimony and child support as a deduction from income on Schedule I, and failed

to schedule his concealed ownership in the marital residence and a business titled in his ex-

wife's name.  The plaintiffs have failed to meet their burden of proving that the statements or

omissions from the debtor's schedules were false.  Judgment will be entered in favor of the

debtor/defendant finding no cause to deny his discharge.

## JURISDICTION

This court has jurisdiction of this adversary proceeding under 28 U.S.C. § 1334(b), 28

U.S.C. § 157(a) and the Standing Order of Reference by the United States District Court for the

District of New Jersey dated July 23, 1984, referring all proceedings arising under Title 11 of the

United States Code to the bankruptcy court.  This is a core proceeding within the meaning of 28

U.S.C. § 157(b)(2)(I) to determine the dischargeability of a particular debt.

## FACTS AND PROCEDURAL HISTORY

Alfred Faiella filed a voluntary petition under chapter 7 of the Bankruptcy Code on

October 14, 2005, a few days prior to the effective date of the bankruptcy reform legislation.  On

October 28, 2005, he filed under oath schedules of assets, liabilities, income and expenses,

together with a statement of financial affairs ("SFA") as required by Code § 521(1) and Fed. R.

Bankr. P. 1007(b)(1).  On Schedule A he listed no real estate.  Schedule B showed minimal

personal property but no interest in any business entity nominally owned by his ex-wife.

Schedule F listed unsecured, nonpriority claims totaling almost $4.5 million, including plaintiffs

at $3.4 million and two business entities owned by his ex-wife with judgments:  ALF

Enterprises, Inc. for $80,000 and TLF Land, Inc. for $94,000.  On Schedule I, Mr. Faiella, a

lawyer employed by a corporation and in private practice for himself, showed a substantial

monthly salary from his corporate employer but claimed a payroll deduction of $6,375 per month

because of a "Garnishment for alimony etc."

Plaintiffs filed a two count complaint.  The First Count seeks denial of a discharge under

§ 727(a)(4)(A) on account of alleged false oaths.  The Second Count requests attorney's fees and

costs and also seeks dismissal of the bankruptcy petition.  Plaintiffs have not pursued dismissal

and have cited no authority for awarding attorney's fees in this type of adversary proceeding.

The case has been litigated solely on the First Count.

In accordance with the court's standard instructions, the parties submitted a Joint

Scheduling Order that was entered by the court.  The order set October 30, 2006 as the discovery

completion date, November 30, 2006 as the last date to file motions to be heard prior to January

8, 2007 and a trial date of January 26, 2007.  Plaintiffs were ordered to file a joint stipulation of

all undisputed facts and both parties were required to file proposed findings of disputed facts and

conclusions of law 10 days before trial.

On January 10, 2007, the defendant/debtor filed an untimely motion for summary

judgment with a hearing date of February 5, 2007, after the scheduled trial date.  His attorney

was informed by the court that the motion would not be considered because it was late.  On

January 18, 2007, defense counsel wrote the court advising that he was ready to proceed with

trial on January 26, 2007 and asked the court to consider the summary judgment pleadings as the

defense's pretrial submissions required by the Joint Scheduling Order, which the court granted.

The defense also pointed out that the plaintiffs had failed to comply with the pretrial submission

requirements of the pretrial order.  This, apparently, prompted plaintiffs to request a

postponement of trial because they had been unable to depose a non-party witness, claiming

difficulty in serving a subpoena.  The court granted plaintiffs' request over defendant's

objection.  Plaintiffs were given until the end of February to complete that one witness's

deposition and trial was carried until April 24, 2007.  Defendant asked the court to consider his

summary judgment motion in light of the postponement of trial; that request was denied.  On

February 27, 2007, plaintiffs requested a further extension of discovery since they still had not

deposed that non-party witness; that request was denied.

On April 3, 2007, defendant filed a motion *in limine* that the court agreed to hear just

prior to the start of trial.  The motion asserted, *inter alia*, that plaintiffs had not responded to a

request for production of documents under Fed. R. Bankr. P. 7035 and had given scant answers

to interrogatories.  Defendant asked that plaintiffs be limited in their proofs at trial by the

allegations of the complaint and their answers to interrogatories.  In response, plaintiffs

conceded they had not replied to a request for production of documents, but intended to

introduce only documents produced by defendant or his ex-wife in discovery.  Plaintiffs cited the

doctrine of continuing concealment, claiming that the debtor had conveyed assets but retained

the benefits of them.  They asserted that Mr. Faiella should be denied a discharge because he

"filed this bankruptcy without fully advising this Court of all assets available to him, all the

while enjoying the fruits of his assets though claiming otherwise."  Specifically, plaintiffs

pointed out that although Mr. Faiella deeded his interest in the marital residence to his wife in

compliance with a property settlement agreement, he continues to live in the residence.

Plaintiffs' brief in opposition to the motion *in limine* also mentions without specificity,

"Additionally, the transactions which will be submitted into evidence which occurred more that a

year prior to the bankruptcy filing also involve the retention of the assets by Mr. Faiella." The

complaint alleges in paragraph 11, without specificity:

> Mr. Faiella has been deliberately concealing virtually all of his real
> and personal property from the Smiths and his numerous other
> creditors.  Though many of his concealment methods may have
> begun more than a year prior to filing this Bankruptcy Petition,
> they have continued well into the period of within one year of the
> filing, which is a legal basis for denying the discharge of Mr

4

Faiella's debts.

The court granted in part and denied in part defendant's motion *in limine*.  Plaintiffs would be limited to evidence relevant to the allegations of the complaint or the facts recited in plaintiffs' answers to interrogatories.  The court allowed plaintiffs to assert the continuing concealment doctrine relating to the marital residence; i.e. that the failure to schedule a concealed interest in the marital residence constituted a false oath by the debtor.  Although not articulated as a continuing concealment, there were enough allegations questioning the *bona fides* of the conveyance of the marital residence and Mr. Faiella's continuing to live there to put him on notice that he would have to defend his lack of interest in that property.  Lastly, the court allowed plaintiffs to try to prove that Mr. Faiella concealed an interest in ALF Enterprises, Inc.

Reciting this procedural history in detail is necessary because plaintiffs allege that defendant has engaged in a pattern of thwarting their collection efforts since they obtained a judgment against him in 1991; nevertheless, their complaint asks that he be denied a discharge due to false oaths in connection with this bankruptcy case under § 727(a)(4)(A).  Plaintiffs' failure to file proposed findings of fact and conclusions of law as required by the Joint Scheduling Order left them unfocused on the gravamen of the complaint: false oaths in connection with this bankruptcy case.  The motion *in limine* helped isolate exactly which statements or omissions by the debtor are allegedly false.  They are:

> 1.  Debtor's scheduling a debt to ALF Enterprises, Inc. was allegedly false because he owed no money to that entity.
>
> 2.  Debtor's scheduling a debt to TLF Land, Inc. was allegedly false because he owed no money to that entity.
>
> 3.  Debtor's claim of a payroll deduction for a garnishment for alimony, etc. was allegedly false because he should not be liable for alimony or

child support.

4. The failure to schedule an interest in the marital residence was allegedly
false because the debtor retained a concealed interest.

5. The failure to schedule an interest in ALF Enterprises, Inc. was
allegedly false because the debtor had a concealed interest.

6. Not listing payments by him to TLF Land, Inc. in response to #3.b of
the Statement of Financial Affairs was allegedly false.

Plaintiffs called three witnesses at trial: Mr. Faiella, his ex-wife, and a lawyer who
nominally represented Mr. Faiella in connection with the Final Judgment of Divorce entered in
1992.  The lawyer's testimony was brief, particularly since the court sustained objections to
testimony about rumors and suppositions the attorney had related at his deposition in a state
court proceeding.  Thus, plaintiffs' evidence consisted almost entirely of the testimony of, and
documents produced by, Mr. Faiella and his ex-wife.  At the close of the plaintiffs' evidence, the
defense rested after offering only a few documents.

### *Smith Judgment*

Mr. & Mrs. Smith sued Mr. Faiella and his partners in 1989 for breach of contract.
Apparently, the Smiths had agreed to sell some real estate for development and Faiella, et al.
failed to close.  This occurred in the midst of the savings & loan debacle and collapse of the real
estate market.  After 15 days of trial, the state court entered judgment for the Smiths on March
12, 1991 awarding damages of $1,506,000.00, plus interest and costs.  Faiella has paid nothing
towards this judgment despite passage of more than fifteen years and the Smiths' persistent
collection efforts.  Mr. Faiella, his ex-wife, and children stayed one step ahead.

In 2000, the Smiths entered into a Collection Agreement and Limited Assignment with
Charles Geyer assigning to him the exclusive right to collect their judgment and agreeing to

share the proceeds.  Mr. Geyer has not appeared as a party or as a witness in this adversary

proceeding.

### *Divorce*

Plaintiffs claim Mr. Faiella's divorce from his ex-wife was a sham meant to shield assets

from creditors.  This underlies all of the plaintiffs' contentions about false oaths. The evidence

proves otherwise. Compare *Rogers v. Boda (In re Boda)*, 280 B.R. 430 (Bankr. N.D.Ill. 2002)

Mr. Faiella and his wife were married in 1974.  She was a teacher and he was a lawyer.

They purchased a residence together in 1978 and proceeded to have four children.  When the

eldest child was born the wife stopped working outside the home for several years.  The parties

had some disagreements, often about finances, that lead to a separation in 1985.  After living

apart for several months the parties signed a property settlement agreement (PSA) dated

December 13, 1985.  The PSA is 25 pages long and contains a detailed recitation of facts about

the husband and wife, their children and their assets.  Notably the PSA states the wife's

residence at the marital home but Mr. Faiella's residence at a different address.  Furthermore, it

states, "the parties have separated, and are now living separate and apart from each other, and it

is their intention to continue to live separate and apart."  Each party was represented by a

separate attorney who acknowledged his client's signature on the PSA.  Provisions were made

for custody by the wife, visitation and child support by Mr. Faiella.  Child support would be

reduced as each child became emancipated. The wife was provided alimony, but only so long as

they both lived and she did not remarry or cohabit with another man.  Provisions were made for

cost of living adjustments in child support and alimony.  Furthermore, it was anticipated that she

might return to work outside the home.  If so, her alimony would be reduced.  The husband

agreed to execute a deed for his interest in the marital residence, acknowledging that the wife

had provided the purchase money over the mortgage.  The wife relinquished any claim to real

estate partnerships owned by the husband and other real estate investments in his name alone, all

of which were described, but not valued.  The PSA refers to the income and expense statements

for the husband's partnerships being attached, but nothing was attached to the exhibit admitted

into evidence.  The husband's pension was to be addressed at the time of a judgment for divorce

by means of a Qualified Domestic Relations Order (QDRO). Other personal property was

divided and the husband agreed to make a cash payment of $27,000 within 18 months; any

amount not paid in 18 months would be reflected in a promissory note to be due in an additional

18 months.  Extensive agreements were set forth regarding the tax treatment of alimony, child

support and property distributed.

As required by the PSA, Mr. Faiella prepared and signed a deed to the marital residence

dated December 14, 1985 and delivered it to the wife.  She, however, put it away and did not

send it for recordation until years later.  Mr. Faiella resided outside the marital residence for

several months following signing the PSA, but then his wife permitted him to return to the home.

Their fourth child was born after he returned to the home.

Although they occupied the same house, they kept their finances separate.  Ms. Faiella's

will names only her children as beneficiaries.  Money continued to be a source of disagreement.

Mr. Faiella suffered the fate of many real estate investors during the savings and loan debacle of

the late 80's and early 90's where properties were lost to foreclosure and large deficiency

judgments were entered in favor of the Federal agencies appointed as receivers of failed savings

& loans and banks.[1] His financial woes lead to more strife and a demand that Mr. Faiella move out of the home, which he did. Ms. Faiella was forced to return to work as a teacher to contribute to household expenses and obtain medical benefits for her children who had serious medical conditions.

On June 10, 1992, the wife filed a complaint for divorce that was uncontested. The PSA was modified by consent and attached to a Final Judgment of Divorce entered on October 13, 1992. At the insistence of the wife's attorney, Mr. Faiella had an attorney appear for him and consent to the judgment of divorce. That attorney, who testified in this trial, worked in the same corporation as Mr. Faiella and had no experience in family law. His appearance in the state court was nominal since he rendered no advice to Mr. Faiella and did not participate in the negotiation of the modification to the PSA.

The modification specified that the ex-wife would be entitled to 50% of the marital portion of the husband's pension pursuant to a QDRO. Since the ex-wife had resumed her teaching career, her alimony was reduced. Child support remained the same but the automatic cost of living increase was eliminated. Adjustments to child support could be sought by either party by showing changed circumstances, if they could not agree.

In 1996, a Second Modification to Property Settlement Agreement was signed by Mr. & Ms. Faiella. The document recites the residence of the ex-wife at the martial home but Mr. Faiella is shown residing at a different address. A specific day of the week was established for him to visit the children in the home. By that time, college and other significant expenses were

---

[1] It is noteworthy that the PSA was signed in 1985 long before the collapse of the real estate market and long before Smiths sued Mr. Faiella.

9

anticipated.  Both alimony and child support were adjusted upwards with escalations for future years until 2006 when it was anticipated that these expenses would begin to decrease.  The ex-wife reserved the right to garnish his wages.

This has all the indicia of bona fide divorce and the ex-spouses (the only significant witnesses called by plaintiffs) both vouch for its authenticity.  Despite the fact that Mr. Faiella has returned to live in the same house as his children and ex-wife, they both maintain, under oath, that they are not married.  Admittedly, their living arrangement is somewhat unusual, but not unheard of.  The family unit can take many forms: married couples of different sex, unmarried couples of different sex, formerly divorced spouses remarrying, civil unions between couples of the same sex, cohabitation by same sex couples, etc.  Children only add to the variety: yours, mine, ours, adopted, foster, etc.  While the Plaintiffs harp on the cohabitation of Mr. Faiella with his children and ex-wife, they have failed to prove that the divorce was a sham.

### *Residence*

Mr. & Ms. Faiella acquired their residence on January 13, 1978.  They both resided there with their children as of the date Mr. Faiella filed bankruptcy (October 14, 2005) and through trial of this adversary proceeding.  Ever since the home had been purchased, Ms. Faiella has lived there.  On four occasions, Mr. Faiella has resided elsewhere for several months at a time.  The first time Mr. Faiella moved out was in 1985.  He had been living at a rented apartment for several months when the PSA and deed were signed on December 13 and 14, 1985 respectively.  He continued to reside outside the marital home for several more months in 1986 until Ms. Faiella permitted him to return to the house.  The deed was not acknowledged until August 31, 1989 and recorded on September 8, 1989, after the Smiths had commenced their contract suit.

10

The second time Mr. Faiella moved out was in 1992.[2]  After he had been out of the house for several months, Ms. Faiella filed a complaint for divorce on June 10, 1992 leading to the Final Judgment of Divorce on October 13, 1992.  Once again, Ms. Faiella allowed Mr. Faiella to return to the residence in early 1993.

The third time he was put out of the house was in 1996.  He established a separate residence for several months.  During his absence from the house, a Second Modification to Property Settlement Agreement was signed on February 15, 1996.

Another period where Mr. Faiella moved out of the house was 2001.  At the time that a Consent Order For Wage Execution To Enforce Property Settlement Agreement (described below) was entered in state court on November 16, 2001, Mr. Faiella had been out of the house for over six months residing in a rented apartment that he had furnished himself.

Mr. Faiella moved out of the residence at the request of his ex-wife on four occasions each time for several months.  He only returned with her permission.  Ms. Faiella agreed with the characterization of Mr. Faiella as residing in the house at her sufferance after 1985.

### *Unsuccessful Fraudulent Transfer Action*

The Smiths sued Mr. & Ms. Faiella in state court on June 14, 1991, to set aside the deed from Mr. Faiella as a fraudulent transfer under the state statute.  The matter was tried without a jury and the state court entered a judgment in favor of Ms. Faiella finding no cause to set aside the deed.

### *Alimony and Child Support*

The PSA as modified obligated Mr. Faiella to pay alimony and child support.  He became

---

[2]  He may have been out of the house in 1990 as well.

delinquent.  On March 16, 2001, the state court, Family Part, entered a consent order requiring his employers to pay 50% of his gross wages to his ex-wife on account of alimony and child support.  At that time, Mr. Faiella had been living out of the house for six months and his record of voluntarily paying alimony and child support had been inconsistent.  The ex-wife's attorney recommended that she obtain a wage garnishment because she knew there were other creditors trying to collect from her ex-husband.  That consent order was prepared by Mr. Faiella's attorneys who are recognized experts in creditor's rights.  That same firm negotiated the sale of the judgment to TLF Land, Inc. (described below) and prepared the bankruptcy pleadings for Mr. Faiella.

Due primarily to a gain realized on the judgment purchased by TLF Land, Inc. (described below), Ms. Faiella's income for 2004 was unusually high.  Plaintiffs suggest that Mr. Faiella could have sought a reduction in alimony and child support due to the ex-wife's extraordinary income but he failed to do so.

### *ALF Enterprises, Inc.*

ALF Enterprises, Inc. was incorporated in the State of New Jersey on May 3, 1989.  Mr. Faiella was the registered agent and the name of the corporation corresponds with his initials. His secretary is named as the incorporator and initial director.  Since incorporation, Ms. Faiella has been the sole shareholder, officer and director.  Plaintiffs alleged that ALF Enterprises, Inc. was used by Mr. Faiella for his investments and that his ex-wife holds title to the corporate stock for his benefit.  No evidence was adduced to support this proposition.

Ms. Faiella appeared knowledgeable regarding the business affairs of ALF.  She invested her separate funds in ALF Enterprises, Inc. and purchased a condominium in Florida.   Mr.

12

Faiella had referred her to this Florida property.  ALF rented the apartment and used the income to pay the expenses.  After several years, ALF sold the Florida property and reinvested in other real estate.  Ms. Faiella swore that she is, and always has been, the sole owner of ALF.

Mr. Faiella was called upon from time to time for legal services.  He billed ALF for his legal work and was paid by the corporation.  He admitted that on occasion he signed his ex-wife's name to certain corporate checks in connection with closing title, but always with her express authorization in advance.  He denied ever owning an interest in ALF.  All of his real estate investments were made through other entities.

ALF sued Mr. Faiella on July 24, 1990 for money owed on an account stated of $80,000.  This was prior to the divorce, so Mr. & Ms. Faiella were still married at the time.  Ms. Faiella recalled that her husband was not living in the marital residence at that time, but she was not certain about that.  Default judgment was entered on August 27, 1990 for $80,000 plus costs.  Mr. Faiella did not oppose the suit because he admitted owing the debt.  A wage execution was levied against Mr. Faiella's salary at a corporation.  He was surprised by the garnishment in spite of the fact that he did not contest the judgment.  On his Schedule F of unsecured creditors, Mr. Faiella listed ALF Enterprises, Inc. for $80,000.

Plaintiffs question the bona fides of the debt underlying this judgment.  The only evidence offered was the testimony of Mr. & Ms. Faiella who both swore that the sum was comprised of the $27,000 never paid by Mr. Faiella under the PSA and other monies advanced by Ms. Faiella through ALF Enterprises, Inc. to Mr. Faiella over the years.  No documentary evidence was produced to show that Mr. Faiella owed any money to ALF Enterprises, Inc., except for the judgment of the Superior Court of New Jersey.  However, Mr. Faiella testified that

13

he had detailed ledgers that he kept contemporaneously with all advances and repayments in connection with this obligation.  He has given copies of the ledgers to his bankruptcy trustee and another creditor who sought discovery in his bankruptcy case.  Plaintiffs did not offer those ledgers as evidence.

Mr. Faiella testified, without objection, that he hired a prominent accounting firm, post petition, to audit the transactions between himself and ALF.  The accountants concluded, after a review of loans and repayments, that Mr Faiella owed ALF $21,679.10.  Based on this information, Mr. Faiella amended Schedule F to reflect a judgment due to ALF Enterprises, Inc. of $21,697.10.  No evidence was offered to refute this.

Plaintiffs confronted Mr. Faiella with his testimony during discovery that he thought he had satisfied the $80,000 judgment in favor of ALF Enterprises, Inc.  At trial, he testified that he had been mistaken at his deposition.  In fact, there was a balance due on the judgment that was verified by his auditors.

### *TLF Land, Inc.*

TLF Land, Inc. was incorporated in the State of New Jersey on February 5, 1996 by Ms. Faiella's cousin to invest in tax liens.  (The initials in the corporate name stand for tax lien foreclosure.)  Ms. Faiella is the sole shareholder.  In 2004, TLF Land, Inc. acquired a judgment against Mr. Faiella.  He listed that judgment as a unsecured creditor on Schedule F in his bankruptcy petition.  Plaintiffs assert that Mr. Faiella satisfied this judgment prepetition and that Mr. Faiella made a false oath when he scheduled TLF Land, Inc. as a creditor.

The background on this judgment goes back to the banking and real estate crisis of the late '80's and early 90's.  The FDIC was appointed receiver for a failed state bank.  Mr. Faiella

14

and others had borrowed money from that bank to finance a real estate venture that also failed. In 1992, the FDIC as receiver for the state bank sued Mr. Faiella and his associates in the United States District Court for the District of New Jersey.  On August 10, 1995, judgment was entered in favor of the FDIC against Mr. Faiella in the amount of $274,504.90 plus interest.

The FDIC assigned the judgment in 1996 and it was assigned again in 1998.  Apparently, these assignees made little effort to collect (or at least had no success in collecting anything) until 2004.  Mr. Faiella referred the assignee to his attorney who negotiated an agreement by the assignee to accept $30,000 for the judgment that, with interest, had nearly doubled in face amount due.  Rather than paying the $30,000 himself to obtain a satisfaction of the judgment, Mr. Faiella first asked his ex-wife's cousin to buy the judgment.  The cousin declined.  He then asked his ex-wife to buy the judgment.  He told her that if he ever had money he could pay it to her on account of the judgment.  That way the money could benefit her and their children rather than other creditors.  She used one of her business entities to put up the money and take an assignment of the judgment.  By a subsequent assignment dated May 5, 2004, TLF Land, Inc. acquired the judgment.

On September 23, October 8 and October 9, 2004[3], Mr. Faiella received three large payments totaling $345,000 for legal fees from a client.  Rather than depositing the checks in his attorney business account, Mr. Faiella endorsed the checks to TLF Land, Inc. as payment on account of the judgment[4].  After crediting these payments, there remained a balance due on the

---

[3] All checks were dated more than one year prior to Mr. Faiella's filing bankruptcy on October 14, 2005.

[4] Ms. Faiella reported the gain on her income tax return.

judgment which Mr. Faiella listed on his schedules.

## DISCUSSION

Plaintiffs seeks to deny the Debtor a discharge under 11 U.S.C. §727(a)(4). Denial of a discharge contravenes the policy of affording debtors a fresh start; "[i]t is an extreme remedy that should not be taken lightly, and its application should be construed liberally in favor of the debtor." *In re Park*, 272 B.R. 323, 330 (Bankr.D.N.J. 2001), *citing Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993). The burden of proof is on the Plaintiffs. Fed. R. Bankr. P. 4005.

### *Standard of Proof*

In order to prevail, it is not necessary for the Plaintiffs to prove the misconduct by clear and convincing evidence; they need only meet their burden by a preponderance of the evidence. *Farouki v. Emirates Bank Int'l,* 14 F.3d 244, 250 n.17 (4th Cir. 1994); *In re Beaubouef,* 966 F.2d 174, 178 (5th Cir. 1992); *In re Adams*, 31 F.3d 389, 394 (6th Cir. 1994); *In re Lawler*, 141 B.R. 425, 429 (9th Cir. BAP 1992); *In re Serafini*, 938 F.2d 1156, 1157 (10th Cir. 1991); *In re Georges*, 138 Fed. Appx. 471 (3d Cir. 2005).[5] With this standard in mind, the court must determine whether the Plaintiffs have met their burden to deny the Debtor a discharge under § 727(a)(4).

### *Section 727(a)(4)*

Under § 727(a)(4), a debtor will be denied a discharge if "the debtor knowingly and fraudulently, in or in connection with the case– (A) made a false oath ...." Essentially, this section "imposes affirmative duties upon a debtor to disclose the existence of all assets and his

---

[5] This court is cognizant of a New Jersey District Court case that adopts a clear and convincing evidence standard as the burden of proof under § 727(a)(4). *Scimeca v. Umanoff*, 169 B.R. 536, 542 (D.N.J.1993).

ownership interests in property and to answer all questions fully and honestly for the benefit of his creditors and other parties with an interest in the proper administration of the bankruptcy case who are entitled to a 'truthful statement' of the debtor's financial condition." *In re Henderson*, 134 B.R. 147, 159 (Bankr.E.D.Pa. 1991), *citing In re Arcuri*, 116 B.R. 873, 879-80 (Bankr.S.D.N.Y. 1990). An objection to discharge under this section requires the plaintiff prove two elements: (1) the debtor knowingly and fraudulently made a false oath, that (2) related to a material fact. *In re Kisberg*, 150 B.R. 354, 356 (Bankr.M.D.Pa. 1992). This includes making a false statement or omission as part of the Statement of Financial Affairs. *Scimeca v. Umanoff*, 169 B.R. 536, 542 (D.N.J. 1993).

### *Payments to Insider*

Plaintiffs allege that the Debtor answered falsely to SFA #3.b when he failed to list payments totaling $345,000 to TLF Land, Inc. However, SFA #3.b requires a listing of payments to insiders within one year immediately preceding the commencement of the case. This case commenced on October 14, 2005. The only evidence of payments to TLF Land, Inc. was testimony that three checks dated September 23, October 8 and 9, 2004 were endorsed to TLF Land, Inc. All these dates are more than one year before the bankruptcy case commenced. Mr. Faiella was not required to list those payments and his answer to SFA #3.b has not been proven false.

### *Garnishment For Alimony and Child Support*

The Superior Court of New Jersey entered a final judgment of divorce that referenced the PSA. Mr. Faiella is legally obligated to support his ex-wife and children. The 1992 Modification to the PSA specifically reserved to the ex-wife the right to obtain a wage execution.

The Consent Order For Wage Garnishment enforced his obligation and effectuated her reserved right.

Plaintiffs claim that the PSA excuses Mr. Faiella's alimony obligation if his ex-wife cohabits with a man.  Since Mr. Faiella lives with his ex-wife, she is cohabiting with a man so he should no longer be obligated to pay alimony, say the Plaintiffs.  Their sophistry continues since Mr. Faiella could not be forced to pay alimony, his reference to a deduction for alimony on his Schedule I is a false oath.

The court rejects Plaintiffs' suggested interpretation of the PSA.  Relieving Mr. Faiella of his obligation to pay alimony upon cohabitation was meant to refer to another man, not Mr. Faiella.  It was meant to address the situation where someone else would be contributing to household expenses, so that alimony from Mr. Faiella would not be needed.  Mr. Faiella's moving back into the residence is not the cohabitation with a man by his ex-wife that would relieve his obligation to support her.  Both parties to the PSA disagree with the strained interpretation of the PSA advocated by Plaintiffs.  Plaintiffs' fanciful interpretation of the PSA is wrong.  Likewise, the court rejects Plaintiffs theory that Mr Faiella could have sought a reduction in alimony and child support because his ex-wife received extraordinary income in 2004.  Just because he might have fought for lower alimony or child support does not make false a statement that accurately reflects the current state of affairs as reflected in a state court order.  Mr. Faiella's inclusion of a deduction from income on Schedule I for the garnishment was not false.

### *TLF Land, Inc. as a creditor*

The FDIC obtained a judgment against Mr. Faiella in state court.  By several assignments

18

that judgment came to be owned by TLF Land, Inc. with an amount due, including interest, of

over $400,000 in 2004.  Mr. Faiella paid $345,000 to TLF Land, Inc. by endorsing checks to that

corporation, leaving a balance due.  He scheduled TLF Land, Inc. as a creditor on account of that

judgment.

Plaintiffs postulate that no money is owed on the judgment because a prior owner of the

judgment agreed to sell it for $30,000.  That cannot be so.  They also want to re-characterize the

sale of the judgment as a satisfaction because the purchase price was paid by Mr. Faiella's ex-

wife and the deal was negotiated by his lawyer.  There was no proof that Mr. Faiella's assets

were used to purchase the judgment.  He did not acquire ownership in the judgment so that a

merger of debtor and creditor status might extinguish the judgment.  It was a valid obligation of

his.  Whether the judgment was owned by his ex-wife's corporation or a stranger, Mr. Faiella

remained obligated.  His including TLF Land, Inc. on Schedule F was not false.

### *Residence*

Plaintiffs lost their bid in state court to have Mr. Faiella's deed for his interest in the

residence set aside as a fraudulent conveyance under state law.  Now they claim he retained an

interest in the residence that he should have listed on Schedule A.

Plaintiffs rely on the doctrine of continuing concealment citing *Newton v. Essres (In re

Essres),* 139 B.R. 958 (D. Colo. 1992).  The Third Circuit has, also, recognized the doctrine.

*Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir.1993).  If a debtor has a concealed interest and

fails to disclose it on his schedules that may constitute a false oath warranting denial of a

discharge under § 727(a)(4).  *Keeney v. Smith (In re Kenney)*, 227 F.3d 679, 685 (6th Cir. 2000).

The concealment is only legally relevant if there is a secret interest that the debtor

retained in the property. *Rosen*, 996 F.2d at 1532.  A secret interest has been described as an

express or tacit agreement where the debtor has the right to reconveyance on demand, a right to

live rent-free, or the retention of control over the property.  *Id*.  Despite the transfer of title to his

wife, Mr. Faiella has remained on the property on and off for over twenty years.  While

continuing to live in the residence after transfer is evidence tending to show a secret interest

pursuant to an express or tacit agreement, the Third Circuit has already determined that more

than mere retention of possession is required.  *Id*. at 1532.

> Evidence of a complete transfer of legal title, even if accompanied
> by evidence that the debtor continues to use the property, may, in
> some circumstances, support a contrary inference that the debtor
> has no remaining interest and only uses the property at the
> sufferance of the new owner.

*Id.* n.5.  If the Debtor is allowed to reside in the property "at the sufferance" of the title holder,

he has not retained a concealed interest.  *Id.* at 1532.

Mr. Faiella resides with his children and ex-wife, that is true.  But he does so at her

sufferance.  Whenever she has asked him to leave, he has; and he has returned only with her

permission.  No proof has been adduced to show that he has any right to reside there or any other

interest in the residence.  The ex-wife may sell the house or borrow against it without Mr.

Faiella's consent and she will keep all proceeds.  She has even cut him out of her will so that if

she dies he will not inherit the house.

The only evidence offered with regard to the residence was the testimony of Mr. Faiella

and his ex-spouse both of whom swore that he has no interest in the residence.  Plaintiffs have

failed to prove that Mr. Faiella made a false oath by failing to list any interest in the residence on

his bankruptcy schedules.

### *ALF Enterprises, Inc.*

There are two allegations related to ALF Enterprises, Inc: first, that Mr. Faiella has a concealed interest in the corporation; second, that he owes no debt to ALF Enterprises, Inc.

With regard to the first allegation, the only connections Mr. Faiella has to the corporation is that he incorporated it, served as registered agent, and has provided legal services for which he was paid.  He also referred his ex-wife to property in Florida that was ALF Enterprises, Inc.'s first investment.  There was no proof that his assets capitalized the corporation or that he received any profit from its operation.  To the contrary, the testimony showed that Ms. Faiella invested her separate funds and directed the operations of the corporation.  Mr. Faiella's failure to list an interest in that corporation on Schedule B was not false.

As to the judgment, the Superior Court of New Jersey entered judgment against Mr. Faiella that remains open in that court's records.  Mr. Faiella argues persuasively that if he neglected to list ALF Enterprises, Inc. as a creditor while the judgment remains of record, Plaintiffs would have alleged that as a basis to deny his discharge.  Proof of the debt that gave rise to the judgment was not well documented at trial.  The fact that the judgment was entered in 1990, seventeen years ago, may account for fuzzy recollections.  Also, how Mr. Faiella's obligation to pay $27,000 under the PSA came to be owned by the corporation was not satisfactorily explained.  But Mr. Faiella testified that he has detailed ledger sheets of all advances and repayments on this debt.  His auditors reviewed his records and concluded that there was a balance due of $21,697.10.  Although Mr. Faiella testified at his deposition that he thought he had paid the judgment in full, he now realizes he was mistaken.  There was insufficient proof for this court to conclude that the judgment of the state court should be

21

disregarded as a sham or that it has been satisfied.  Scheduling ALF Enterprises, Inc. as a

judgment creditor was not false.

## **CONCLUSION**

Plaintiffs complain that their efforts to collect a multimillion dollar judgment have been

frustrated by the collusion of Mr. Faiella and his ex-wife to keep his assets and earnings in her

hands – safe from his creditors.  They point to the following facts to support their collusion

theory.

• Mr. Faiella deeded his interest in the marital residence to his wife but continues to live

there.

• The deed was dated December 14, 1985 but not recorded until September 8, 1989, after

Plaintiffs sued Mr. Faiella.

• A final judgment of divorce was entered with the consent of a corporate attorney for

Mr. Faiella who had no experience in family law.

• A consent order for wage execution was entered to pay 50% of Mr. Faiella's gross

wages to his ex-wife as alimony and child support.

• ALF Enterprises, Inc., (nominally owned by his ex-wife), obtained a judgment and

wage execution against Mr. Faiella but Plaintiffs doubt that he owed any money to that entity.

• Mr. Faiella testified at a deposition that he thought this judgment had been satisfied.  At

trial he testified differently.

• Mr. Faiella identified property in Florida for investment by ALF Enterprises, Inc.

• Mr. Faiella has signed his ex-wife's name on corporate checks.

• Mr. Faiella has acted as attorney for his ex-wife's corporations.

22

• TLF Land, Inc. (also nominally owned by his ex-wife), bought an old judgment against Mr. Faiella for $30,000.  He subsequently paid $345,000 to TLF Land, Inc. by endorsing checks from a client to him for legal fees.

• The consent judgment for wage execution in favor of the ex-wife and the sale of the judgment to the ex-wife's company (TLF) at a steep discount, were negotiated by Mr. Faiella's creditor's rights attorneys – the same firm that put him in bankruptcy.

The court is left with the impression that Plaintiffs are correct – that Mr. Faiella has worked successfully with his ex-wife to see that his income goes to benefit her and their children before his other creditors.  One could argue that supporting children and an ex-spouse is a policy promoted by both state and federal law, including the first priority given to domestic support obligations in the 2005 amendments to the Bankruptcy Code.  11 U.S.C. § 507(a)(1).  Plaintiffs, however, feel wronged.  They see the Faiella family living comfortably on his substantial earnings while they have been frustrated in their efforts to collect on their multi-million dollar judgment.  Whether obligations to family should trump obligations to creditors is not the issue before this court.  The only issue is did the Debtor make a false oath in connection with his bankruptcy case?  Or more accurately, have the Plaintiffs proved by a preponderance of the evidence that he made such a false oath?  They have not.  Judgment will be entered in favor of the Debtor/Defendant finding no cause to deny his discharge.

Dated:   June 13, 2007                                    __/S/ *Raymond T. Lyons*_____
                                                                          United States Bankruptcy Judge